Kent Brockelman (#009627)
COPPERSMITH SCHERMER & BROCKELMAN PLC
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
(602) 224-0999
kbrockelman@csblaw.com

Russell A. Jones (*admitted pro hac vice*)
Kathryn S. McConnell (*admitted pro hac vice*)
DOW LOHNES PLLC
Six Concourse Parkway, Suite 1800
Atlanta, Georgia 30328
(770) 901-8800
rjones@dowlohnes.com
kmcconnell@dowlohnes.com

*Attorneys for Defendant Cox Enterprises, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| MICHAEL RUSSO, a single man, | No. CV11-00393-PHX-JAT |
| Plaintiff, | |
| vs. | **DEFENDANT COX ENTERPRISES, INC.'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED** |
| MANHEIM REMARKETING, INC., a Georgia corporation f/k/a MANHEIM CORPORATE SERVICES, INC., a subsidiary of COX ENTERPRISES, INC., a Delaware corporation; COX ENTERPRISES, INC., a Delaware corporation, | |
| Defendants. | |

{00031600.1 }

Defendant Cox Enterprises, Inc. ("Cox") respectfully moves this Court for an Order pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) dismissing Plaintiff's claims against it because Plaintiff cannot establish that the Court may exercise either general or specific personal jurisdiction over Cox,[1] and because Plaintiff's Second Amended Complaint ("SAC") fails to state a claim against Cox upon which relief may be granted.

The Motion to Dismiss Cox pursuant to Fed. R. Civ. P. 12(b)(2) is based on this Motion to Dismiss, supporting Memorandum of Points and Authorities, the Declarations of Shauna Sullivan Muhl and Kelly Conger filed concurrently, and the record for this lawsuit ("Lawsuit"). The Motion to Dismiss Cox pursuant to Fed. R. Civ. P. 12(b)(6) is based on this Motion to Dismiss, supporting Memorandum of Points and Authorities, and the record for this Lawsuit.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Introduction

Plaintiff Michael Russo ("Plaintiff") was employed by Manheim Remarketing, Inc. f/k/a Manheim Corporate Services, Inc. ("Manheim"), and all claims in this Lawsuit arise out of that employment relationship and the termination thereof. Plaintiff also has sued Manheim Remarketing, Inc.'s distant parent corporation, Cox.

Plaintiff cannot establish that the Court may exercise general personal jurisdiction over Cox. Cox does not have the substantial or continuous and systematic contacts with Arizona necessary to establish general personal jurisdiction. Cox is not licensed or authorized to do business in Arizona, does not have any offices or registered agent in Arizona, and does not solicit business in Arizona. Further, there is simply no credible basis for finding personal jurisdiction as to Cox based upon any alter-ego, agency, or any other theory of imputed jurisdiction.

---

[1] For the benefit of the Court, Cox Enterprises, Inc. should be distinguished from Cox Media L.L.C., which is registered to do business in Arizona but has not been named in this Lawsuit. Cox Media L.L.C. is a wholly-owned subsidiary of CoxCom, LLC, which is a wholly-owned subsidiary of Cox Communications, Inc., which is a wholly-owned subsidiary of Cox Holdings, Inc., which is a wholly-owned subsidiary of Cox Enterprises, Inc. (Declaration of Shauna Sullivan Muhl ("Muhl Dec."), attached hereto as Exhibit B, at ¶ 10.)

{00031600.1 }

The requirements for establishing specific personal jurisdiction also cannot be met. Cox has not purposefully availed itself of the privileges of doing business in Arizona or purposely directed any activities toward Arizona. Plaintiff's claims do not arise out of or result from any alleged forum-related activities of Cox and exercising jurisdiction over Cox would not be reasonable. The exercise of personal jurisdiction over Cox would be unfounded and in violation of federal due process requirements. As a result, this Court should dismiss Cox from this Lawsuit pursuant to Fed. R. Civ. P. 12(b)(2). Further, Plaintiff has failed to allege the facts necessary to support his sole claim against Cox, and as a result Cox should also be dismissed from this Lawsuit pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Procedural Background

Plaintiff filed an initial Complaint and a First Amended Complaint ("FAC") against Manheim on October 8, 2010, when this case was pending in Arizona Superior Court. Both Plaintiff's initial Complaint and his FAC contained a single cause of action against Manheim, alleging that Manheim violated the Arizona Employment Protection Act ("AEPA") by terminating Plaintiff's employment in retaliation for Plaintiff exercising his workers' compensation rights. On March 1, 2011, Manheim removed the case to this Court based on complete diversity of citizenship of the parties pursuant to 28 U.S.C. §§ 1441 and 1332. (Dkt. #1.) On March 8, 2011, Manheim filed its Answer to Plaintiff's FAC. (Dkt. #6.) On July 8, 2011, Plaintiff filed his Motion for Leave to Amend First Amended Complaint ("Motion to Amend"), seeking, among other things, to name Cox as an additional defendant in the Lawsuit. (Dkt. #21.) On August 12, 2011, the Court granted Plaintiff's Motion to Amend. (Dkt. # 24.) On August 17, 2011, Plaintiff filed his Second Amended Complaint ("SAC") naming Cox as an additional defendant in the Lawsuit. (Dkt. # 25.)

## III. Factual Background

### A. Plaintiff's Claims

Plaintiff alleges that he is a former employee of Defendant Manheim. (SAC ¶ 11.) Manheim employed Plaintiff as Vice President of National Accounts in the Reconditioning Operations & Planning Group until the elimination of his position on October 8, 2009. See id.;

see also Declaration of Kelly Conger ("Conger Dec."), attached hereto as Exhibit A, at ¶ 2. Plaintiff alleges that Manheim rewarded him with promotions, pay raises, and fringe benefits during the course of his employment. (SAC ¶ 12.) In addition to his claim against Manheim alone under the AEPA, Plaintiff alleges that Cox (and Manheim) violated the Family and Medical Leave Act ("FMLA"), by (1) failing to comply with notice requirements mandated by 29 U.S.C. § 2619(a), and (2) terminating Plaintiff's employment in violation of 29 U.S.C. § 2615(a)(1). (SAC ¶¶ 27-36.)

### B. Manheim Remarketing, Inc.

On December 23, 2009, as part of a corporate consolidation process, Manheim Corporate Services, Inc. merged into Manheim Remarketing, Inc. (Muhl Dec., ¶ 4.) Manheim Remarketing, Inc. is a subsidiary of holding company Manheim Investments, Inc. (Id. at ¶ 5) Manheim Remarketing, Inc. is incorporated in Delaware and headquartered in Atlanta, Georgia. (Id. at ¶ 3.) Manheim is registered to conduct business in Arizona under the trade names Manheim Tucson and Manheim Phoenix. (Id.) Manheim primarily is engaged in the business of owning and operating wholesale automobile auctions. (Id. at ¶ 5.)

Prior to the merger of Manheim Corporate Services, Inc. into Manheim Remarketing, Inc., Manheim Corporate Services, Inc. employed Plaintiff in the position of Vice President of National Accounts. (Conger Dec., ¶ 2.) After the merger, Plaintiff was employed by Manheim Remarketing, Inc. in the same position in Manheim's Reconditioning Operations & Planning Group. (Id.) Cox has never employed Plaintiff. (Muhl Dec., ¶ 9.)

Plaintiff's position was eliminated on October 8, 2009, as part of a restructuring of the Reconditioning Operations & Planning Group. (Conger Dec., ¶ 4.) All decisions with respect to the elimination of Plaintiff's position were made by employees of Manheim. (Id.) The decision to eliminate Plaintiff's position was communicated to him by employees of Manheim. (Id.) Manheim established and enforced the human resources policies and practices that applied to Plaintiff, including policies and practices pertaining to any benefits and leave entitlements, including those provided by the FMLA. (Id. at ¶ 5.) Manheim has neither denied

that it employed Plaintiff, nor challenged the jurisdiction of this Court as to it, and has answered Plaintiff's First Amended Complaint ("FAC") and subsequent SAC (Dkt. # 6, # 27.)

### C. Cox Enterprises, Inc.

Cox is a privately-held corporation incorporated in Delaware and headquartered in Atlanta, Georgia. (Muhl Dec. ¶ 2.) Cox owns twelve (12) direct wholly-owned subsidiaries, which in turn own numerous subsidiaries engaged in a wide variety of businesses, including automotive, media, and communications industries. (Id.) Manheim is a subsidiary of holding company Manheim Investments, Inc., which is a subsidiary of Manheim, Inc., which is a subsidiary of Cox Holdings, Inc., which is a subsidiary of Cox. (Id. at ¶ 5.)

Cox does not exert management control over the day-to-day operations of Manheim, or determine, direct, or enforce the corporate employment policies and practices applicable to Manheim Remarketing, Inc.'s corporate employees. (Muhl Dec. ¶ 7.) Personnel decisions, including decisions about hiring, terminating, and promoting Manheim's employees, are made by Manheim. (Id.)

Cox is not licensed or authorized to do business in Arizona. (Id. at ¶ 6.) Cox has no registered agent or offices in Arizona, its Board of Directors does not meet in Arizona, and Cox does not solicit business in Arizona. (Id.)

Cox is named in this lawsuit solely on the basis of Plaintiff's bare, conclusory allegation that "Manheim … relied [on] and implemented corporate policies, procedures, and practices, including those affecting employee benefits and leave entitlements, that are promulgated by Cox[,]" and "[u]pon further information and belief … these corporate-wide policies, procedures, and practices applied to Russo." (SAC ¶ 3.) Plaintiff offers no explanation as to how this conclusory allegation renders Cox liable to Plaintiff. Equally, Plaintiff offers no facts to support this allegation, and the reality is that no such facts exist.

Indeed, the very factual allegations asserted by Plaintiff in his SAC support the position that Manheim was responsible for the human resources policies and practices that applied to Plaintiff during his employment at Manheim, and that Manheim alone was responsible for personnel decisions regarding Plaintiff that are the subject of his claims in this Lawsuit.

First, Plaintiff alleges that Manheim, and only Manheim, was his employer for the purposes of this Lawsuit. See SAC ¶ 11 ("Manheim employed Russo"); SAC ¶ 13 (Plaintiff suffered his alleged injury "<u>during the course of his employment at Manheim's</u> Seattle, Washington location.") (emphasis supplied). Second, Plaintiff alleges that Manheim "rewarded Russo for his [employment] efforts with promotions, pay raises and fringe benefits, including a new company car which Russo received in June 2009." (SAC ¶ 12.) Notably absent from Plaintiff's SAC is any specific factual allegation that Cox directly provided these benefits or rewards to Plaintiff or made any decisions with respect to Plaintiff's pay, benefits, or promotion. Third, Plaintiff alleges that the material actions taken with regard to his alleged injury were taken by Manheim. See SAC ¶ 14 ("Russo immediately reported the injury to <u>Manheim</u>") (emphasis supplied); SAC ¶ 15 ("at the <u>request of Manheim</u>, Russo completed a written accident report and <u>informed Manheim</u> of his potential claim for workers' compensation coverage") (emphasis supplied); SAC ¶ 17 ("<u>Manheim</u> submitted a worker's compensation claim to its carrier") (emphasis supplied).

Finally, Plaintiff alleges that Manheim, not Cox, terminated his employment (SAC ¶ 23) and that the persons who communicated Manheim's decision to eliminate Plaintiff's position were "Manheim executives." (SAC ¶¶ 18-23.) By his own admissions, Manheim directed, implemented, and enforced the employment policies and practices applicable to Plaintiff that are the subject of his claims in this Lawsuit.

Plaintiff's recitation of the elements of his FMLA claim and his general legal conclusions that Cox failed to provide Plaintiff with notice of his rights and entitlements under the FMLA (SAC at ¶ 28); that he provided notice of his intention to take leave or "Defendants knew or should have known that he likely was eligible for FMLA leave[,]" (SAC ¶ 35); and that "Defendants terminated [him] … in retaliation and in violation of the FMLA" (SAC ¶ 36), (notwithstanding that these conclusory statements are contrary to Plaintiff's specific factual

aversions[2]), do not change the fact that Manheim was Plaintiff's employer and is the only proper defendant in this Lawsuit.  A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Further, as Plaintiff only alleges that Manheim was his employer (SAC ¶ 11), Cox had no obligations to plaintiff under the FMLA; therefore, the allegations with respect to Cox regarding Plaintiff's intention to take leave are irrelevant and superfluous.  Therefore, as Plaintiff's claims arise out of his employment with Manheim and the termination of his employment by Manheim, Manheim is the only proper defendant in this Lawsuit.

**III.  Legal Argument**

  **A.  Cox's Contacts With Arizona Are Insufficient For This Court To Exercise Personal Jurisdiction Over Cox**

Fundamental precepts of due process require that non-resident defendants have certain "minimum contacts" with the forum state to ensure that the exercise of either general or specific personal jurisdiction does not "offend traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The purpose of the "minimum contacts" test articulated in International Shoe is twofold: (1) to protect defendants against the burdens of litigating in a distant, inconvenient forum; and (2) to ensure that states do not step beyond the limits of their sovereignty under a federal system of government.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).  The plaintiff bears the burden of proving that a court may exercise personal jurisdiction over a defendant.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

  **1.  Plaintiff Cannot Establish General Personal Jurisdiction Over Cox.**

A court may exercise general personal jurisdiction only if a defendant is domiciled in the forum state, or its activities there are "substantial, continuous and systematic."  Perkins v.

---

[2] See SAC ¶ 23 ("Manheim terminated Plaintiff's employment" (emphasis supplied)); SAC ¶ 14 Plaintiff "reported the injury to Manheim" (emphasis supplied)); SAC ¶ 15 (Plaintiff "informed Manheim of his potential claim for workers' compensation coverage." (emphasis supplied)).

{00031600.1}                                6

Benguet Consolidated Mining Co., 342 U.S. 437, 445 (1952); Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990) (same); see also Batton v. Tennessee Farmers Mut. Ins. Co.,153 Ariz. 268, 270, 736 P.2d 2, 4 (1987) (general jurisdiction over a nonresident exists only when defendant's contacts are so substantial or "systematic and continuous" that defendant could reasonably foresee being haled into court even when the cause of action does not arise out of or relate to defendant's activities in the forum state).

The amount of contact with the forum state necessary to establish general personal jurisdiction is "intended to be a fairly high standard" (Brand v. Menlove Dodge, 796 F. 2d 1070, 1073 (9th Cir. 1986)) and "requires that the defendant's contacts be of the sort that approximate physical presence." Bancroft & Masters, Inc. v. Augusta National, Inc., 223 F. 3d 1082, 1086 (9th Cir. 2000); see e.g., Kruska v. Perverted Justice Foundation Inc., CV 08-0054-PHX-SMM, 2008 WL 5235373, * 3 (D. Ariz. Dec. 16, 2008) (citing Brand and Bancroft and finding first prong necessary to establish specific jurisdiction over defendant had not been met).

Factors weighing heavily in deciding whether general jurisdiction exists include whether the defendant: (1) is incorporated in the state; (2) makes sales in the state; (3) solicits or engages in business in the state; (4) serves the state's markets; (5) designates an agent for service of process in the state; or (6) holds a license in the state. Bancroft, 223 F.3d at 1086. Here, none of the above factors are met as to Cox. Cox is neither incorporated nor headquartered in Arizona, but rather is incorporated in Delaware and is headquartered in Atlanta, Georgia. (Muhl Dec., ¶ 3.) Cox does not solicit business in Arizona, is not licensed or authorized to do business in Arizona, and has no offices or registered agent in Arizona. (Id. at ¶ 6.) The total lack of contact with Arizona precludes any finding that Cox's activities "approximate a physical presence" in Arizona. Bancroft, 223 F.3d at 1086.

In addition, even if a defendant is found to have engaged in "substantial" or "continuous and systematic" activities in the forum state, the exercise of general jurisdiction still must be determined to be "reasonable" so as to require a defendant to defend itself in the forum state; i.e., the exercise of jurisdiction must comport with "fair play and substantial justice." Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc., 1 F.3d 848, 851, n. 2 (9th Cir. 1993) (citing

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985)).  Plaintiff has made no showing that it would be reasonable for this Court to exercise jurisdiction over Cox.  Therefore, the exercise of personal jurisdiction over Cox would be unfounded and improper.

### (a) Personal Jurisdiction Over Manheim Cannot Be Imputed To Its Distant Parent Corporation, Cox.

Plaintiff has failed to allege any specific facts in his SAC that would confer jurisdiction over Cox.  Rather, in what appears to be an attempt to establish jurisdiction, Plaintiff alleges, in vague and conclusory fashion, that "Manheim … relied [on] and implemented corporate policies, procedures, and practices, including those affecting employee benefits and leave entitlements, that are promulgated by Cox[,]" and "these corporate-wide policies, procedures, and practices applied to Russo."  (SAC ¶ 3.)  Rule 8(a) requires Plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief, including the grounds establishing personal jurisdiction over each defendant.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions [.]" Twombly, 550 U.S. at 555.

Notwithstanding that Plaintiff's allegation is simply false,[3] it is well established that the mere existence of a relationship between a parent corporation and its separate corporate subsidiary is insufficient to establish personal jurisdiction over the parent on the basis of the subsidiary's contact with the forum.  Doe v. Unocal Corp., 248 F.3d 915, 925 (9th Cir. 2001).  In order to premise jurisdiction on a subsidiary's contacts, a plaintiff must provide admissible evidence sufficient to make a *prima facie* showing that the subsidiary was the "alter ego" or the agent of the parent.  Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements, Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003); Dougherty v. Lincare, Inc., CV10-0978 PHX DGC, 2010 WL

---

[3] See Muhl Dec., ¶ 7 ("Cox does not determine, direct, or enforce the corporate employment policies and practices applicable to Manheim Remarketing, Inc.'s corporate employees … Personnel decisions, including decisions about hiring, terminating, and promoting Manheim Remarketing, Inc.'s employees are made by Manheim Remarketing, Inc."); Conger Dec., ¶ 5. ("Manheim Remarketing, Inc. established and enforced the human resources policies and practices that applied to Mr. Russo, including policies and practices pertaining to any benefits and leave entitlements, including those provided by the [FMLA]."

3218613, * 2 (D. Ariz. Aug. 13, 2010) (same); see, e.g., AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996); Transure, Inc. v. Marsh &McLennan, Inc., 766 F.2d 1297, 1299-1300 (9th Cir. 1985). An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations. Doe, 248 F.3d at 926. Here, Plaintiff cannot establish an alter ego or agency theory of personal jurisdiction regarding Cox.

### i. Plaintiff Cannot Prove Alter Ego Relationship.

To establish an alter ego relationship between Cox and Manheim, Plaintiff must demonstrate that: (1) there is such a unity of interest and ownership between the corporations that their separate personalities no longer exist; and (2) recognizing their separate corporate identities would result in fraud or injustice. Compagnie Bruxelles Lambert, 94 F.3d at 591; Dougherty, 2010 WL 3218613, at * 2 (same). "Underlying both of these factors is a general presumption in favor of respecting the corporate entity." Dougherty, 2010 WL 3218613 at *1 (quoting Calvert v. Huckins, 875 F.Supp. 674, 678 (E.D. Cal. 1995)).

There is no evidence of a "unity of interest" between Cox and Manheim, as Plaintiff has not pled (nor can he prove) facts supporting a finding that Cox has "substantially total control" over the activities of Manheim. Gatecliff v. Great Rep. Life Ins. Co., 170 Ariz. 34, 37, 821 P.2d 725, 728 (1991). "There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." Calvert, 875 F. Supp. at 678. Here, there are no allegations, much less evidence, that Cox in any way "controls" the activities of Manheim such that it is a "mere instrumentality" of Cox. Calvert, 875 F. Supp. at 678; see, e.g., Oldenburger v. Del E. Webb Dev. Co., 159 Ariz. 129, 134, 765 P.2d 531, 536 (Ct. App. 1988) (finding no evidence that DEVCO's corporate existence had been so overshadowed by the parent corporation that it should be disregarded, or that recognizing its existence would perpetrate a fraud).

Plaintiff also has not pled, and cannot prove, any facts demonstrating a singular corporate identity between Cox and Manheim, such as "inadequate capitalization, commingling of assets, [or] disregard of corporate formalities." Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1149 (9th Cir. 2004). Plaintiff's allegation that Manheim is a

"wholly owned subsidiary of Cox" (SAC ¶ 3) not only is factually incorrect (see Muhl Dec., ¶ 3), but the allegation alone is insufficient to make Manheim an alter ego of Cox. See Harris Rutsky, 328 F.3d at 1135 ("100% control through stock ownership does not by itself make a subsidiary the alter ego of the parent").

Further, even if Plaintiff could support his bare assertion that Cox promulgated corporate policies, procedures, and practices relied upon and implemented by Manheim (SAC ¶ 3), which he cannot, such an allegation is insufficient to show a unity of ownership such that regarding Manheim and Cox as separate entities would result in a fraud or injustice. Indeed, this Court recently found a far more extensive relationship between a parent company and its direct subsidiary insufficient to render the subsidiary the "alter ego" of the parent. In Dougherty v. Lincare, Inc., this Court granted a motion to dismiss for lack of personal jurisdiction filed by defendant Lincare Holdings, Inc. ("LHI"), the parent company of co-defendant Lincare, Inc. ("Lincare") that was sued, along with Lincare, for various claims arising out of alleged negligence of a Lincare employee. 2010 WL 3218613, at * 2. In support of their assertion that Lincare was the alter ego or agent of LHI, the plaintiffs pointed out that LHI owned 100% of Lincare's stock; that the two companies had identical officers and directors and "held themselves out to the public as one company"; and that "LHI's corporate office [was] responsible for Lincare's executive functions, human resources, accounting, information systems, marketing and business development, and acquisitions [.]" Id. The Court found that these facts and others, whether standing alone or taken together, were insufficient "to show a unity of ownership such that regarding LHI and Lincare as separate entities would result in a fraud or injustice." 2010 WL 3218613, at *3; see also Doe, 248 F.3d at 926, 928 ("appropriate parental involvement includes … articulation of general policies and procedures"); Action Manufacturing Co. v. Simon Wrecking Co., 375 F.Supp.2d 411, 425 (E.D. Pa. 2005) (sharing of services, such as human resource services and information systems, does not show unity between parent and subsidiary when other corporate formalities are respected).

Here, Cox and Manheim have a far more attenuated relationship than LHI and Lincare. They maintain separate corporate identities and operate independently of each other. (Muhl Dec., ¶ 8.) Cox does not exert management control over the day-to-day operations of Manheim or enforce the corporate employment policies and practices applicable to Manheim's corporate employees. (Id. at ¶ 7.) The key operational managers and directors who oversee Manheim's Reconditioning Operations and Planning Group at Manheim are not directors or officers of Cox. (Conger Dec., ¶ 6.) Personnel decisions, including decisions about hiring, terminating, and promoting Manheim's employees, are made by Manheim. (Id.) Plaintiff simply has not established, and cannot establish, an alter ego relationship between Cox and Manheim.

Further, Plaintiff is also unable to show that recognition of the separate identities of Cox and Manheim would result in fraud or injustice. Here, Plaintiff cannot identify any actual inequitable outcome that might result from recognizing Cox's corporate separateness. Indeed, Plaintiff initially named only Manheim as a defendant in this Lawsuit, and he can proceed with the Lawsuit against that entity. Manheim is an ongoing business; there is no evidence that it is undercapitalized or would be unable to satisfy any judgment that might be entered against it. Recognition of Cox's separate corporate status certainly does not result in any inequity or potential detriment to Plaintiff.

### ii.   **Plaintiff Cannot Prove An Agency Relationship.**

To establish an agency relationship, Plaintiff must show that Manheim performs functions as Cox's representative "in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" Doe, 248 F.3d at 928 (citing Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1404-1405 (9th Cir. 1994)); Dougherty, 2010 WL 3218613 at *1 (citing same standard). If the subsidiary performs functions that the parent would otherwise have to perform, then the subsidiary functions as "merely the incorporated department of the parent." Doe, 248 F. 3d at 928-29 (quoting Gallagher v. Mazda Motor of America, Inc., 781 F. Supp. 1079, 1084 (E.D. Pa. 1992)). This is far from an accurate description of the relationship between Cox and Manheim. Cox invests in

several subsidiary companies, who in turn provide widely varying services, both themselves and through their own subsidiaries. (Muhl Dec., ¶ 2.) Cox is in the business of investment, whereas Manheim owns and operates wholesale automobile auctions. (Id. at ¶¶ 4, 5.)

In Doe, the Ninth Circuit distinguished an agency relationship between a parent and its subsidiary from that of a holding company and its subsidiary, explaining that in the case of a holding company, the parent simply could hold another type of subsidiary, in which case imputing the subsidiary's jurisdictional contacts to the parent would be improper. Doe, 248 F.3d at 929. Like the parties in Doe, Cox holds Manheim, through several levels of corporate structure, as one of its many investments in subsidiary entities. (Muhl Dec., ¶ 2.) Plaintiff has neither alleged nor provided any evidence that, but for Manheim, Cox would be forced to own and operate wholesale automobile auctions itself or through another subsidiary. Doe, 248 F.3d at 929 (subsidiary's contacts not imputed to parent corporation in the absence of any evidence that, but for the subsidiary, the parent corporation would undertake to conduct and control petrochemical operations in California).

Plaintiff's unsupported allegations are entirely without merit, but even if they were taken as truthful, they are insufficient to establish jurisdiction over Cox either on an alter-ego or agency theory. Accordingly, Plaintiff cannot establish facts supporting that this Court has general personal jurisdiction over Cox, and Cox should be dismissed from this Lawsuit.

### 2. **Plaintiff Cannot Establish Specific Personal Jurisdiction Over Cox.**

Cox lacks the constitutionally-mandated "minimum contacts" with Arizona required for the exercise of personal jurisdiction. Moreover, even if such contacts did exist, which they do not, Plaintiff's claims do not arise out of any alleged activities by Cox in Arizona.

The Ninth Circuit has established a three-part test to determine if the exercise of specific jurisdiction would comport with due process: "(1) the defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activities; [and] (3) exercise of jurisdiction must be reasonable." Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th

Cir. 1993); see e.g., Travelers Casualty and Surety Co. v. Telstar Construction Co., 252 F. Supp. 2d 917 (D. Ariz. 2003). Here, Plaintiff cannot establish any of the requirements for specific jurisdiction.

The first prong of this test requires that Cox either purposefully avail itself of the privileges of conducting activities in the forum state or purposefully direct its activities toward the forum state. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). In analyzing the purposeful availment requirement, the Ninth Circuit performs a qualitative evaluation of the forum-state contacts to determine whether the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." Travelers Casualty, 252 F. Supp. 2d at 932. Typically, evidence of purposeful availment will include "action taking place in the forum that invokes the benefits and protections of the laws in the forum," while evidence of purposeful direction will include "action taking place outside the forum that is directed at the forum." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006).

Plaintiff has made no showing that Cox (1) committed an intentional act, (2) expressly aimed at the forum state, which (3) caused harm that Cox knew was likely to be suffered in the forum state. Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme, 433 F. 3d 1199, 1206 (9th Cir. 2006) (citing Schwarzenegger, 374 F.3d at 803). Plaintiff has not alleged that Cox has performed any intentional acts or affirmatively engaged in *any* activities directed at Arizona. In short, Plaintiff has not pled that Cox availed itself of the benefits and protections of Arizona law so as to reasonably anticipate being haled into court in this state, nor could he do so. Cox is a Delaware-incorporated, Georgia-headquartered corporation that is not licensed or authorized to do business in Arizona and has no registered agent or offices in Arizona; further, its Board of Directors does not meet in Arizona, and it does not solicit business in Arizona. (Muhl Dec., ¶¶ 2, 6). In short, Cox has not "purposefully availed" itself of the privileges of doing business in Arizona.

Even if Plaintiff could establish that Cox purposefully availed itself of the privilege of conducting activities in Arizona, Plaintiff cannot establish a nexus between any supposed

activity by Cox and Plaintiff's claim against Cox. To establish specific personal jurisdiction, Plaintiff's FMLA-related claims against Cox must arise out of or result from Cox's supposed contacts with Arizona. See Bancroft, 223 F.3d at 1088. The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's cause of action arises out of the defendant's forum-related activities. That is, the "arising out of" requirement is met if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. Travelers Casualty, 252 F. Supp. 2d at 932.

Plaintiff's claims as alleged in his SAC clearly arise out of his relationship with his former employer, Manheim. Manheim made the decision to eliminate Plaintiff's position and communicated that decision to him. (SAC ¶¶ 18-23; Conger Dec., ¶ 4.) Further, Manheim, not Cox, established and enforced the human resources policies and practices that applied to Plaintiff, including leave entitlements and benefits provided by the FMLA. (Conger Dec., ¶ 5; Muhl Dec., ¶ 7). Plaintiff's claims in this Lawsuit simply do not arise out of any activities in Arizona on the part of Cox.

Further, Plaintiff does not allege that any of the acts or omissions cited in support of his FMLA claim occurred in Arizona. Indeed, to the contrary, Plaintiff alleges in his SAC that the alleged injury that was a "serious health condition" for the purposes of the FMLA occurred in Seattle, Washington. (SAC ¶ 13.) Plaintiff's work was national in scope and not primarily directed at Arizona. (Conger Dec., ¶ 3.) The only reason this court has jurisdiction over Manheim is because Manheim is authorized to do business in Arizona (Muhl Dec., ¶ 3.), and Plaintiff is an Arizona resident. (SAC ¶ 1.)

Therefore, even if Cox engaged in business in Arizona, which it does not, the acts and omissions Plaintiff cites in support of his claims in this Lawsuit arise out of events and actions taking place in forums other than Arizona. Consequently, Plaintiff cannot meet his *prima facie* burden of establishing specific personal jurisdiction.

Finally, the court must consider whether the exercise of jurisdiction would be reasonable even if the "purposeful availment" and "arising out of" requirements are met. The Ninth Circuit considers seven factors to determine whether the exercise of specific jurisdiction over a

defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiffs interest in convenient and effective relief; and (7) the existence of an alternative forum.  Travelers Casualty, 252 F. Supp. 2d at 933.  For the reasons cited above, the exercise of jurisdiction over Cox would not be reasonable, given that Cox has not interjected itself in the forum state, Plaintiff's claims as alleged in his SAC clearly arise out of his relationship with Manheim, and Arizona's interest in adjudicating the dispute vis-a-vis Cox is minimal, given that Cox has had no contacts with Arizona.  Similarly, Plaintiff has no interest in obtaining convenient and effective relief as to Cox in Arizona given Cox's lack of contacts with Arizona. If Plaintiff wishes to bring an action against Cox, Delaware or Georgia are more appropriate forums.  Under these circumstances, it would be unreasonable and unfair, as well as inefficient, to maintain this Lawsuit against Cox in Arizona.

### B.     Plaintiff Has Failed To State A Claim Against Cox

Further, even if Cox was subject to the jurisdiction of this Court, Cox should be dismissed because Plaintiff has failed to state a claim against Cox upon which relief could be granted.  The FMLA has relatively limited application, applying only to "eligible employees" working for an employer in an employer-employee relationship.  Plaintiff fails to allege any facts to support a finding that he is an "eligible employee" as defined by the FMLA, or that Cox was his employer for the purposes of the FMLA.

For an employee to be eligible for the protections afforded by the FMLA, the employee must have: (1) worked for the covered employer for at least 12 months; (2) worked at least 1,250 hours during the previous 12 months; and (3) been employed at work site where there are at least 50 or more employees within a 75 mile radius.  29 U.S.C. § 2611(2)(A), (2)(B)(ii) (defining "eligible employee"); 29 C.F.R. § 825.110 (same).

Plaintiff's failure to allege any of these facts in his SAC is fatal to his claim that Cox "interfered with and impaired [his] rights" in violation of 29 U.S.C. § 2615(a)(1).  (SAC ¶ 29).

The "rights" Plaintiff alleges that Cox interfered with are only afforded to "eligible employees." As Plaintiff has failed to allege facts supporting a finding that he is an "eligible employee," Plaintiff had no rights that Cox could allegedly interfere with under the FMLA, and his claim against Cox fails. See 29 U.S.C. § 2612 (leave entitlement applicable to "eligible employee"); 29 U.S.C. § 2614 ("eligible employee" entitled to be restored to position of employment after returning from FMLA leave); 29 C.F.R. § 825.100 (same).

Further, although Plaintiff has alleged that Cox is a "covered employer" for the purposes of the FMLA (SAC ¶¶ 4, 5), he has not alleged that Cox was his employer. See 29 U.S.C. §§ 2611-12 (requiring the existence of an employer-employee relationship); 29 C.F.R. § 825.104(c) ("Normally the legal entity that employs the employee is the employer under the FMLA."). Indeed, to the contrary, Plaintiff has specifically alleged that Manheim, not Cox, was his employer (SAC ¶ 11), and that the alleged actions giving rise to his claims, including actions involving his alleged "serious health condition" and his subsequent termination, were taken by Manheim. See SAC ¶ 15 ("at the request of Manheim, Russo completed a written accident report"); SAC ¶ 17 ("Manheim submitted a workers' compensation claim to its carrier"); SAC ¶ 23 ("Manheim terminated Russo on October 8, 2009.").

Plaintiff's SAC fails to allege any facts sufficient to support any alternate theory of liability against Cox. See 29 C.F.R. § 825.104(c)(1) ("Where one corporation has an ownership interest in another corporation, it is a separate employer unless it meets the "joint employment" test … or the "integrated employer" test"). Plaintiff's allegation that Cox promulgated corporate policies, procedures, and practices relied upon and implemented by Manheim (SAC ¶ 3), is insufficient to show that Cox exercised "control over the work or working conditions" of Plaintiff, such that Cox and Manheim were "joint employers" of Plaintiff.[4]  See 29 C.F.R. § 825.106; Moreau v. Air France, 356 F.3d 942 (9th Cir. 2004). Nor

---

[4] Further, even if Plaintiff could show that Cox and Manheim were joint employers of Plaintiff, Cox would be regarded as a "secondary employer" for the purposes of the FMLA, and Plaintiff's claim that Cox failed to provide notice to him of his entitlements under the FMLA would fail; "[i]n joint employment relationships, only the primary employer is responsible for giving required notices to its employees, providing FMLA leave, and maintenance of health benefits." 29 C.F.R. § 825.106(c).

has Plaintiff alleged facts sufficient to show that Cox was the "integrated employer" of Plaintiff, such as a centralized control of labor relations or common management between Cox and Manheim.  29 C.F.R. § 825.104 (2)(i)-(iv).

For the foregoing reasons, Plaintiff's SAC should be dismissed as to Cox because Plaintiff has failed to allege he is an eligible employee under the FMLA.  Alternatively, Plaintiff's SAC should also be dismissed because Plaintiff has failed to plead facts sufficient to establish that Cox is his employer for the purposes of the FMLA.

### IV.   Conclusion

For the reasons stated above, Defendant Cox Enterprises, Inc. should be dismissed from this action for two separate and independent reasons: (1) because Plaintiff does not allege and cannot prove that the Court has personal jurisdiction over Cox; and (2) because Plaintiff has failed to state a claim against Cox upon which relief may be granted.

**DATED:**  November 1, 2011.

DOW LOHNES PLLC


By:/s/ Kathryn S. McConnell
    Russell A. Jones *(admitted pro hac vice)*
    Kathryn S. McConnell *(admitted pro hac vice)*
    Six Concourse Parkway, Suite 1800
    Atlanta, Georgia 30328

COPPERSMITH SCHERMER & BROCKELMAN PLC
Kent Brockelman
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004

*Attorneys for Defendant Cox Enterprises, Inc.*

**Certificate of Filing and Service**

Pursuant to the Case Management/Electronic Case Filing Administrative Policies and Procedures Manual ("CM/ECF Manual") of the United States District Court for the District of Arizona, I hereby certify that on the 1st day of November, 2011, my office electronically transmitted the foregoing Motion to Dismiss Cox Enterprises, Inc. to the U.S. District Court clerk's office for filing.

Pursuant to Section D(2) of the CM/ECF Manual, a Notice of Electronic Filing should be sent to the assigned judge and:

D. John Djordjevich
The Law Office of D. John Djordjevich
7135 East Camelback Road, Suite 230
Scottsdale, Arizona 85251
*Attorney for Plaintiff*


/s/Kent Brockelman