1    WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8
     Michael Russo, a single man,                No. CV 11-393-PHX-JAT
9
                     Plaintiff,                   **ORDER**
10
     v.
11
     Manheim Remarketing, Inc., a Georgia
12   corporation f/k/a Manheim Corporate
     Services, Inc., a subsidiary of Cox
13   Enterprises, Inc., a Delaware Corporation;
     Cox Enterprises, Inc., a Delaware
14   corporation,

15                    Defendants.

16

17         Pending before the Court are (1) Manheim Remarketing, Inc.'s Motion to Strike

18   Plaintiff's Jury Demand (Doc. 28), (2) Cox Enterprises, Inc.'s Motion to Dismiss for

19   Lack of Jurisdiction and Failure to State a Claim on Which Relief can be Granted (Doc.

20   39), and (3) Plaintiff's Motion for Leave to Amend Second Amended Complaint (Doc.

21   51).[1]  The Court now rules on these Motions.

22   **I.      BACKGROUND**

23           **A.      Procedural Background**

24   _____

25         [1]  The Court notes that Plaintiff has failed to send this Court courtesy copies that
     are required by the District of Arizona Electronic Case Filing (CM/ECF) Administrative
26   Policies and Procedures Manual and Local Rule of Civil Procedure 5.4.  *See* Manual § II,
     ¶ D(3); LRCiv 5.4.   The Parties are reminded that courtesy copies for the Court are
27   required with regard to certain documents and, in the future, all Parties must comply with
     all Local Rules of Civil Procedure and the CM/ECF Administrative Policies and
28   Procedures Manual.

On October 8, 2010, Plaintiff filed a First Amended Complaint ("FAC") in Maricopa County Superior Court, which was served on Defendant Manheim Remarketing, Inc. ("Manheim") on February 7, 2011. (Doc. 1). In his FAC, Plaintiff asserted claims for wrongful termination in violations of the Arizona Employment Protection Act and Arizona Revised Statutes section 23-150, *et seq*. ("AEPA"). (*Id.*). On March 1, 2011, Defendant Manheim removed the case to the District Court of Arizona based on diversity of citizenship pursuant to 28 U.S.C. §§ 1441 and 1332. (*Id.*). Plaintiff did not include a jury demand in his original complaint or in the FAC. On March 8, 2011, Manheim filed an answer to the FAC. On April 14, 2011, Plaintiff and Defendant Manheim agreed, in the Parties' Joint Proposed Case Management Plan, that a jury trial was not requested. (Doc. 12 at 8).

On July 8, 2011, after the parties had engaged in some discovery, Plaintiff moved for leave to amend the FAC to add new claims under the Family and Medical Leave Act ("FMLA") and to add Cox Enterprises, Inc. ("Cox") as a Defendant. Plaintiff's proposed Amended Complaint contained a jury demand, though no mention of this change was made in Plaintiff's Motion to Amend. (Doc. 21). The Court granted Plaintiff leave to amend. (Doc. 24). In its Order granting leave to amend, the Court noted that, if Plaintiff included a new jury demand in the amended complaint, Defendant Manheim would be given an opportunity to file a Motion to Strike the newly added jury demand.

In addition to the wrongful termination claim against Defendant Manheim, the Second Amended Complaint ("SAC") alleged that Defendants Manheim and Cox failed to give Plaintiff notice of his rights as required by the FMLA and wrongfully terminated him in violation of the FMLA. On November 1, 2011, newly added Defendant Cox filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

After Cox moved to dismiss for lack of personal jurisdiction, Plaintiff requested that the Court allow discovery on the issue of personal jurisdiction. Plaintiff proposed

additional discovery in the form of depositions of the affiants whose affidavits were attached to Cox's Motion to Dismiss for lack of personal jurisdiction. Cox opposed Plaintiff's request for additional discovery on the issue of personal jurisdiction. The Court found that testing the sufficiency of the affiant's statements would be an improper use of discovery and denied Plaintiff's request for discovery related to the question of personal jurisdiction.

On September 6, 2011, Defendant Manheim moved to strike the jury demand in the SAC. On February 6, 2012, Plaintiff filed a Motion for Leave to Amend his Second Amended Complaint to include additional factual allegations regarding his newly added claim. These factual allegations are also pled in Plaintiff's Response to the Motion to Dismiss for Lack of Personal Jurisdiction. The Court will discuss each of these Motions in turn herein.

### B.    Factual Background

In Count I of his Complaint, Plaintiff alleges that Defendant Manheim violated the Arizona Employment Protection Act. Plaintiff alleges that, on July 16, 2009, during the course of his employment at Manheim's Seattle, Washington location, Russo tripped over a carpet tear, fell, and sustained injuries to his shoulder, neck and leg. (SAC, Doc. 25 at ¶ 13). Plaintiff alleges that, on August 5, 2009, Manheim submitted a worker's compensation claim to Manheim's carrier, Broadspire Services, Inc. (*Id.* at ¶ 17). Plaintiff further alleges that, on August 13, 2009, Russo participated in a conference call with Manheim executives, Kelly Conger, Kellie Baker Resek, and Frederick Stanfield, who all had knowledge of his worker's compensation claim.. (*Id.* at ¶¶ 19-20). Plaintiff alleges that, during that conference call, Conger inquired as to Plaintiff's medical condition and his availability to return to his normal job functions, to which Plaintiff responded that his was still seeking medical treatment and he would not be able to immediately return to his regular duties. (*Id.* at ¶ 21). Plaintiff alleges that, in direct response to Plaintiff's statements and with knowledge of Plaintiff exercising his worker's compensation rights, Conger stated that "changes were going to be made" and that

Plaintiff's position was to be eliminated.  (*Id.* at ¶ 22).  Plaintiff alleges that Manheim terminated him on October 8, 2009.  (*Id.* at ¶ 23).

In Count II of his Complaint, Plaintiff alleges that Defendants Manheim and Cox violated the Family and Medical Leave Act ("FMLA").  Plaintiff alleges that, despite being aware of their obligations to notify employees of their rights and entitlements to FMLA benefits and protections, Defendants failed to post conspicuous and prominent notices explaining the FMLA and its enforcement procedures to their employees, failed to include information about the FMLA's rights and protections in employee handbooks explaining personnel policies and procedures, and failed to provide employees with legible, easily readable and understandable explanations of their FMLA rights.  (*Id.* at ¶ 28).  Plaintiff alleges that, as a direct result of Defendants failure to provide this notice, Plaintiff has been deprived of information regarding his rights to leave and other benefits provided by FMLA, has been denied FMLA leave and other benefits and protections, and was terminated in violation of FMLA.  (*Id.* at ¶ 29).

## II.    COX'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.    Facts relevant to the personal jurisdiction analysis

Cox is a privately-held corporation incorporated in the State of Delaware. (Declaration of Shauna Sullivan Muhl, Doc. 39-1, Exhibit B, ¶ 2).  Cox's corporate headquarters and principal place of business are located in Atlanta, Georgia.  (*Id.*).  Cox is not licensed or authorized to do business in Arizona.  (*Id.* at ¶ 6).  Cox has no officers or registered agent in Arizona.  (*Id.*).  Cox's Board of Directors does not meet in Arizona. Cox does not solicit business in Arizona.  (*Id.*).

Defendant Manheim Remarketing, Inc. is a subsidiary of holding company Manheim Investments, Inc., which is a subsidiary of Manheim, Inc., which is a subsidiary of Cox Holdings, Inc., which is a subsidiary of Defendant Cox.  (*Id.* at ¶ 5).  Cox has twelve direct wholly-owned subsidiaries, which in turn own numerous subsidiaries that are engaged in a wide variety of businesses, including the automotive, media, and

communications industries.  (*Id.* at ¶ 2).  Manheim Remarketing, Inc. is a Delaware corporation with its corporate headquarters in Atlanta, Georgia.  (*Id.* at ¶ 3).  Manheim Remarketing, Inc. is registered to do business in the State of Arizona under the trade names Manheim Tucson and Manheim Phoenix.  (*Id.*).  Manheim Remarketing, Inc. is engaged primarily in the business of owning and operating wholesale automobile auctions.  (*Id.* at ¶ 5).

On December 23, 2009, Manheim Corporate Services, Inc. merged into Manheim Remarketing, Inc.  (Declaration of Kelly Conger, Doc. 39-1, Exhibit A, ¶ 2).  Prior to the merger, Plaintiff was employed by Manheim Corporate Services, Inc. and, after the merger, Plaintiff was employed by Manheim Remarketing, Inc. in the same position.  (*Id.* at ¶ 4).  Manheim Remarketing, Inc. established and enforced the human resources policies and practices that applied to Mr. Russo, including policies and practices pertaining to any benefits and leave entitlements, including those provided by the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.*  (*Id.* at ¶ 5).  Manheim is a participating employer in certain benefit plans it makes available to its eligible employees that Cox either administers or outsources to third-party providers to administer, including Manheim's Welfare Benefit Plan, Long-Term Incentive Plan, Pension Plan and 401(k) Savings Plan, and Manheim's associated COBRA obligations.  (Declaration of Mary Ellen Marcilliat-Falkner, Doc.  45 at Exhibit B, ¶ 2).

Manheim pays Cox fees to administer such plans or to allow it to access the services offered by the third-party providers.  (*Id.*).  Cox administered Plaintiff's employee benefits and Plaintiff communicated with employees of Cox regarding pension benefits, years of service, participation in Cox's corporate incentive program and/or other human resources related benefits.  (Plaintiff's Declaration, Doc. 49-1 at ¶ 8).  In 2008, Plaintiff received a certificate of appreciation for 20 years of employment with Cox.  (*Id.* at ¶ 9).  Manheim pays Cox fees to perform payroll services on its behalf and to allow Manheim to access to payroll services provided by a third-party service provider.  (Doc. 45 at Exhibit B at ¶ 3).  Plaintiff's employment compensation was direct deposited into

his bank account by Cox.  (Plaintiff's Declaration, Doc. 49-1 at ¶ 6).  After Plaintiff's termination, his COBRA payments were made from the State of Arizona directly to Cox.  (*Id.* at ¶ 12).

Manheim also pays Cox fees to allow Manheim's eligible employees access to company cars provided by a third-party lease company.  (Doc. 45 at Exhibit B at ¶ 3).  Plaintiff's company car was administered in Arizona by Cox with Wheels, Inc. of Chicago, Illinois.  (Plaintiff's Declaration, Doc. 49-1 at ¶ 7).  Manheim provides its employees with a badge allowing its corporate employees access to the building located at 62054 Peachtree Dunwoody Road NE, Atlanta, Georgia 30328 that it shares with Cox.  (Doc. 45 at Exhibit B at ¶ 4).  Manheim pays Cox fees to utilize office space in that building.  (*Id.*).  Plaintiff had an employee badge designated for Cox-Manheim at the shared corporate address in Atlanta, Georgia  (Plaintiff's Declaration, Doc. 49-1 at ¶ 5).

Shauna Sullivan Muhl ("Muhl"), the Vice President of Legal and Corporate Secretary for Cox Enterprises, Inc. also serves on the Board of Directors and as a Corporate Secretary for Manheim Remarketing, Inc.  (Declaration of Shauna Sullivan Muhl, Doc. 39-1, Exhibit B, ¶ 1).  Of the three members of Manheim Remarketing, Inc.'s Board of Directors, Muhl is the only director who also serves as an officer of Cox.  (*Id.* at ¶ 8).  Cox and Manheim share three corporate officers, including Muhl.  (Plaintiff's Declaration, Doc. 49-1 at ¶ 15).  The decision to eliminate Plaintiff's position was communicated to him by employees of Manheim Remarketing, Inc.  *Id.* at ¶ 4.

Cox Enterprises does not own any real estate in Arizona.  (Declaration of Cody Partin, Doc. 50, Exhibit A at ¶ 2).

Plaintiff argues that the following facts further support personal jurisdiction over Cox: Cox Communications, another subsidiary of Cox, is building a Deer Valley Technology Center in Arizona and Manheim and Cox Communications have completed alternative energy projects in Arizona.

The following material facts are in dispute:

Cox contends that personnel decisions, including decisions about hiring,

terminating and promoting Manheim Remarketing, Inc.'s employees are made by Manheim Remarketing, Inc.  (Declaration of Shauna Sullivan Muhl, Doc. 39-1, Exhibit B, ¶ 7).  Cox further contends that all decisions taken with respect to the elimination of Mr. Russo's position were made by employees of Manheim Remarketing, Inc. (Declaration of Kelly Conger, Doc. 39-1, Exhibit A, ¶ 4).  Cox also asserts that it does not exert management control over the day-to-day operations of Manheim Remarketing, Inc., and that it does not determine, direct, or enforce the corporate employment policies and practices applicable to Manheim Remarketing, Inc.'s corporate employees.  (*Id.* at ¶ 7).

Plaintiff contends he was employed by Manheim and Cox.  Plaintiff contends that Manheim relied on and implemented corporate policies, procedures, and practices, including those affecting employee benefits and leave entitlements that are promulgated by Cox.  (Plaintiff's Declaration, Doc. 49-1 at ¶ 13).

### B.    Legal standard

Plaintiff bears the burden of establishing personal jurisdiction.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  A defendant may move prior to trial to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *see, e.g.*, *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citing Rule 12(b)(2)).  When a defendant does so, "the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction'" over the defendant.  *Cummings v. W. Trial Lawyers Assoc.*, 133 F. Supp. 2d 1144, 1151 (D. Ariz. 2001) (quoting *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986)).  Conflicts over statements contained in the plaintiff's and defendant's affidavits "must be resolved in the plaintiff's favor."  *Schwarzenegger*, 374 F.3d at 800 (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

Because the Court has not held an evidentiary hearing on the issue of personal jurisdiction, Plaintiff must only make "a prima facie showing of jurisdictional facts

through the submitted materials" in order to avoid dismissal for lack of personal jurisdiction. *Data Disc*, 557 F.2d at 1285.

Because no applicable federal statute governing personal jurisdiction exists, Arizona's long-arm statute applies to this case. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995) (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993)). Arizona's long-arm statute provides for personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a);[2] *see also Uberti v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995), *cert. denied*, 516 U.S. 906 (1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution").

Absent traditional bases for personal jurisdiction (i.e., physical presence, domicile, and consent), the Due Process Clause requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Int'l Shoe*, 326 U.S. at 316). The Due Process Clause protects a defendant's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Omeluk v. Langsten Slip & Batbyggeri*, 52 F.3d 267, 269-70 (9th Cir. 1995) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)).

> By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

---

[2] Arizona Rule of Civil Procedure. 4.2(a) provides, in pertinent part, "A court of this state may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States." Ariz. R. Civ. P. 4.2(a).

*Id.* at 270 (alteration in original) (quoting *Burger King*, 471 U.S. at 472).

"In determining whether a defendant had minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on 'the relationship among the defendant, the forum, and the litigation.'" *Brink v. First Credit Resources*, 57 F. Supp. 2d 848, 860 (D. Ariz. 1999) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).   If a court determines that a defendant's contacts with the forum state are sufficient to satisfy the Due Process Clause, then the court must exercise either "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 nn.8-9 (1984) (citations omitted); *Doe*, 112 F.3d at 1050.   The nature of the defendant's contacts with the forum state will determine whether the court exercises general or specific jurisdiction over the defendant.  *Id.*

### 1.    General Jurisdiction

A court may assert general jurisdiction over a nonresident defendant "[i]f the defendant's activities in the state are 'substantial' or 'continuous and systematic,' . . . even if the cause of action is unrelated to those activities." *Doe*, 112 F.3d at 1050-51 (quoting *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986)); *see Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). There is a "fairly high standard" in establishing that defendant's activities in the state are substantial.  *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (internal citations omitted).    This requires that "defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal citation omitted).  "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.* (internal citation omitted).

Cox argues that it does not have "substantial" or "continuous and systematic" contacts with Arizona, so that an exercise of general jurisdiction would be appropriate.

The Court agrees.  Plaintiff has not presented any activities that suggest that Cox has a physical presence or has something akin to a physical presence in Arizona.  Cox does not own property or maintain an office in Arizona.[3]  Cox is not licensed to do business in Arizona and does not have a statutory agent in Arizona.  Although Cox communicated with employees of its subsidiary, Manheim, who reside in Arizona, for the purposes of administering human resource benefits, these communications do not approximate physical presence.  *See Cubbage v. Merchent*, 744 F.2d 665 (9th Cir. 1984) (California court did not have general personal jurisdiction over Defendant where Defendant's contacts included: employing a small percentage of hospital employees who resided in California, advertising in white pages and yellow pages of a directory that was distributed in California, served hospital patients that were California residents (over one-quarter of hospital's patients were California residents), held California Medi-Cal numbers, treated Medi-Cal patients, and received reimbursement from the State of California for Medi-Cal treatment);  *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 (9th Cir. 1984) (Arizona court did not have general personal jurisdiction over Defendant who solicited a distributorship agreement in Arizona, visited Tucson, Arizona a number of times, entered into purchase agreements with Plaintiff that contained an Arizona choice of law and forum provision, Defendant purchased parts from Plaintiff in Tucson, Arizona, and the Defendants sent many letters and telexes and made numerous telephone calls to Tucson).

Because Cox's activities in the forum state are not sufficiently substantial, this Court cannot assert general personal jurisdiction over Cox based on its contacts with Arizona.

---

[3]    Plaintiff argues that, because Cox's subsidiaries (Cox Communications and Manheim) own property in Arizona, Cox has a physical presence in Arizona.  This conclusion is unwarranted.  Without some showing that Cox's subsidiaries are the alter egos or agents of Cox, a simple corporate affiliation does not confer personal jurisdiction on a parent company.  Plaintiff specifically disavows that he is arguing an alter ego or agency theory.  Doc. 49 at 10 ("Cox's arguments of alter ego and corporate separateness and the case law citations to [sic] regarding personal jurisdiction are also inapplicable to the facts of this case.").  Accordingly, Plaintiff's assertion that Cox has a physical presence in Arizona because its subsidiaries own property in Arizona does not aid in the Court's analysis of general jurisdiction.

### 2.      General Jurisdiction based on the Parent/Subsidiary Relationship

Cox also argues that personal jurisdiction cannot be imputed to it merely because it has a parent/subsidiary relationship with Manheim.  It is well-settled law that, even if the Court has personal jurisdiction over a subsidiary, such personal jurisdiction will not be imputed to a parent holding company unless (1) the parent holding company is merely an alter ego of the subsidiary or (2) the subsidiary is the general agent of the parent in the forum. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir. 2011).

As previously discussed, Plaintiff specifically disavows that he is arguing an alter ego or agency theory for the purposes of imputing personal jurisdiction to Cox. (*See* Doc. 49 at 10) ("Cox's arguments of alter ego and corporate separateness and the case law citations to [sic] regarding personal jurisdiction are also inapplicable to the facts of this case.").  Plaintiff has presented no argument or evidence that there is an alter ego or agency relationship between Manheim and Cox, so that Manheim's contacts with Arizona could be imputed to Cox.  Accordingly, the Court cannot find general personal jurisdiction over Cox under an alter ego or agency theory.

### 3.      Specific Jurisdiction

If a defendant does not have substantial or continuous and systematic contacts with the forum state, then the court must determine whether the defendant has had sufficient contacts with the forum state such that the exercise of specific jurisdiction over the defendant would not offend the Due Process Clause.  *See Int'l Shoe*, 326 U.S. at 316; *Core-Vent*, 11 F.3d at 1485.  The Ninth Circuit applies a three-prong test to determine whether the defendant's contacts with the forum state are sufficient to subject him to the state's specific jurisdiction.  *Schwarzenegger*, 374 F.3d at 802.  Under this three-prong test, specific jurisdiction exists only if: (a) the nonresident defendant purposefully directs activities or consummates some transaction with the forum of the plaintiff, or performs some act by which he personally avails himself of the privilege of conducting activities in that forum; (b) the claim arises out of or relates to the defendant's forum-related

activities; and (c) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *Id.*; *see, e.g., Bancroft.*, 223 F.3d at 1086 (citing *Cybersell, Inc. v. Cybersell, Inc.* 130 F.3d 414, 416 (9th Cir. 1997)); *see also Burger King*, 471 U.S. at 472-73.

### a.     Purposeful Availment

In discussing the specific jurisdiction test, the United States Supreme Court emphasized long ago that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe*, 326 U.S. at 319).

More recently, the Supreme Court held that a court may also have specific jurisdiction over a defendant where the intended effects of the defendant's non-forum conduct were purposely directed at and caused harm in the forum state. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (adopting "effects test" for libel, invasion of privacy, and intentional infliction of emotional distress claims where defendant's Florida conduct had "effects" in California, the forum state). Consistent with this precedent, the Ninth Circuit has held that a district court should apply different specific jurisdiction tests to contract and tort cases. *See Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (stating that in determining whether court has specific jurisdiction over defendant, "[i]t is important to distinguish contract from tort actions"); *Ziegler*, 64 F.3d at 473.

In cases involving certain types of torts, the Ninth Circuit has held that courts should apply the "effects test" and that "jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having an effect in, the situs state." *Ziegler*, 64 F.3d at 473. In cases arising out of contractual relationships, including those involving related tort claims, the Ninth Circuit applies the "purposeful availment" test enunciated in *Hanson*.[4] Because Plaintiff's claims related to his employment sound in

---

[4]   *See, e.g., Roth*, 942 F.2d at 621 (applying purposeful availment test in breach of contract action); *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (applying purposeful availment test in case where the plaintiff brought action for

contract, the Court will apply the purposeful availment test in analyzing whether there is specific jurisdiction over Cox.[5]

In cases arising out of a contractual relationship, a "contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction. '[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' are the factors to be considered. The foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction." *Gray*, 913 F.2d at 760 (internal citations omitted) (quoting *Burger King*, 471 U.S. at 474, 478-79). A defendant has engaged in affirmative conduct and thereby "purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created "continuing obligations" between himself and the residents of the forum.'" *Id.* (quoting *Burger King*, 471 U.S. at 475-76); *see Cybersell, Inc.*, 130 F.3d at 417 (stating that "the

rescission, breach of warranty, and misrepresentation); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 817 (9th Cir. 1988) (finding effects test inapplicable and stating that, "unlike *Calder* and *Haisten*, in this case personal jurisdiction is sought on a contract claim, not on a tort claim").

[5] "[I]t is well established that the *Calder* [effects] test applies only to intentional torts, not to . . . breach of contract and negligence claims." *Holland America Line, Inc. v. Wartsila North America, Inc.*, 485 F.3d 450 (9th Cir. 2007) (internal citations omitted). Plaintiff has made no legal argument regarding how the test for purposeful availment is satisfied in this case, except for the conclusory statements that Cox purposefully availed itself through conducting business in Arizona and through administering Plaintiff's employee benefits on behalf of Manheim. Further, Cox simply applies the "*Calder* effects test," with no discussion as to whether Plaintiff's claims arise from an allegedly intentional tort or negligence or arise from Plaintiff's employment contract. Without adequate briefing from the Parties, the Court is left to guess at each Party's theory of the case.

With regard to his claim against Cox, in his Complaint, Plaintiff alleges that (1) despite Cox's awareness of its obligations to provide FMLA notice to Plaintiff, it failed to post such notice, failed to include information about Plaintiff's FMLA rights in employee handbooks, and failed to provide employees with explanations of their FMLA rights (Doc. 25 at ¶ 28) and (2) Cox knew or should have known that Plaintiff was eligible for FMLA leave. The Court cannot ascertain with certainty from these allegations whether Plaintiff is alleging an intentional violation of his rights or a negligent violation or is simply alleging a breach of duty arising from a contractual relationship. Because it appears to the Court that Plaintiff is likely alleging either negligence in not providing notice or a breach of statutory duty arising from the alleged employment relationship between Cox and Plaintiff, the Court will apply the purposeful availment test.

'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents" and "[i]t is not required that a defendant be physically present within, or have physical contacts with, the forum, provided that his efforts 'are purposefully directed' toward forum residents.") (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).

In this case, Cox has purposefully availed itself in Arizona if Cox's administration of human resource benefits to Manheim employees, some of which reside in Arizona, represents deliberate action within Arizona or a creation of continuing obligations to forum residents. It is undisputed that Cox's administration of human resource benefits included correspondence to Plaintiff and other Manheim employees in Arizona over a period of years, access to an interactive website relating to employee benefits run by Cox, telephone calls between Plaintiff and Cox representatives to deal with benefits issues, Cox depositing Plaintiff's paychecks into his Arizona bank account, Cox contracting with a third-party rental car company in Arizona to give Plaintiff a company car, and Cox accepting payments from the State of Arizona relating to Plaintiff's COBRA benefits.

All of these actions were taken by Cox itself and not by its subsidiary, Manheim, and amount to Cox itself creating continuing obligations to forum residents. Cox argues that all of these actions arise from its relationship with *Manheim*, which is not an Arizona corporation, and not from its relationship with *Plaintiff*, who just happens to reside in Arizona, and thus, these actions cannot amount to Cox purposefully availing itself to the privileges of conducting activities within Arizona.

The Court disagrees. Cox knew that Manheim employed people nationwide and agreed to handle the administration of benefits to all of those employees, which included several interactions not only with Plaintiff in Arizona, but also with the State of Arizona itself (i.e., COBRA) and third-parties within the state of Arizona (i.e., the car rental company). Certainly, Cox, through its own actions, agreed to create a continuing relationship with Plaintiff, an Arizona employee, which created a continuing obligation to him within Arizona. *See Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d

1474, 1479-1480 (9th Cir. 1986) (where Blue Cross, a Missouri and Kansas corporation, agreed to provide insurance coverage to Southwest's employees nationwide and argued that it did not purposefully avail itself to California, where the Plaintiff, a Southwest employee, resided, and "Blue Cross freely negotiated the Enrollment Agreement with Southwest, to cover all of its employees, knowing that Southwest employed people nationwide [and, even though Blue Cross] might not have foreseen at the time that it signed the Enrollment Agreement that its contract with Southwest would have effects in California," Court found from Blue Cross's later communications with Plaintiff that "Blue Cross not only could foresee that its actions would have an effect in California, but also that the effect "was contemplated and bargained for," and thus Cox had purposefully availed itself to the benefits and protections of California.).

Accordingly, the Court finds that Cox purposefully availed itself to the benefits and protections of Arizona for the purposes of the specific jurisdiction analysis. The Court must now determine whether Plaintiff's claims against Cox arise out of Cox's activities within Arizona.

### b.  Whether Claims Arise Out of Activities

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's cause of action arises out of the defendant's forum-related activities. *Doe*, 112 F.3d at 1051; *see Omeluk*, 52 F.3d at 271. The "arising out of" requirement is met if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Terracom*, 49 F.3d at 561.

In this case, whether the "but for" test is satisfied is heavily tied up in the merits of Plaintiff's claim against Cox.

In his declaration, Plaintiff alleges that Manheim relied on and implemented corporate policies, procedures, and practices, including those affecting employee benefits and leave entitlements that are promulgated by Cox. Plaintiff argues that this implementation included the procedure for giving notice to employees of their FMLA rights. Cox has submitted declarations from Manheim and Cox employees that state that

Cox does not exert management control over the day-to-day operations of Manheim Remarketing, Inc. and Cox does not determine, direct, or enforce the corporate employment policies and practices applicable to Manheim Remarketing, Inc.'s corporate employees, including those provided by the FMLA.  (Conger Declaration, Doc. 39-1 at Exhibit A, ¶ 5, Muhl Declaration, Doc. 39-1 at Exhibit B, ¶ 7).

Cox further argues that Plaintiff does not have personal knowledge that Manheim's policy regarding FMLA notices was implemented by Cox and, thus, the Court should disregard this statement in Plaintiff's Declaration.  The Court agrees that Plaintiff has not demonstrated personal knowledge of facts leading to this conclusion. However, Cox has failed to adequately support its conclusory assertion that Cox has no involvement in Manheim's implementation of the FMLA.  While this may be true, it is necessarily a fact-specific inquiry that cannot be resolved through the self-serving, conclusory statements within Cox's affidavits.  Plaintiff has presented enough evidence of Cox's involvement in Manheim's human resource procedures that lead the Court to conclude that Plaintiff has met his burden of establishing a prima facie showing that his claims against Cox could arise out of Cox's contact with Manheim's employees in Arizona and that, but for that contact, Plaintiff would have been provided proper notice of his FMLA rights.[6]

---

[6]   Where an evidentiary hearing is not held, dismissal for lack of personal jurisdiction is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction.  *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 300 (9th Cir.1986).  "Uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Am. Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).

Because this issue is necessarily fact specific, Cox's Motion to Dismiss for lack of personal jurisdiction is denied without prejudice for Cox to re-raise either at the summary judgment or trial stage.  *See Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064, n. 1 (9th Cir. 1990) (If the plaintiff is able to meet its prima facie burden, the movant can nevertheless continue to challenge personal jurisdiction either at a pretrial evidentiary hearing or at trial itself); *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039-40 (9th Cir. 2004) (stating that a jurisdictional finding on a genuinely disputed fact is inappropriate when the jurisdictional issue and the substantive issues are so intertwined that the jurisdiction question depends on the resolution of factual issues going to the

Accordingly, the Court finds that Plaintiff has established a prima facie case that his claims arise out of Cox's forum-related activities. The Court must now determine whether exercising personal jurisdiction over Cox would be reasonable.

### c.    Reasonableness of Jurisdiction

An unreasonable exercise of jurisdiction violates the Due Process Clause even if the "purposeful availment" and "arising out of" requirements of the specific jurisdiction test are satisfied. *See Ziegler*, 64 F.3d at 474-75*; Int'l Shoe*, 326 U.S. at 316 (holding that exercise of personal jurisdiction must "not offend traditional notions of fair play and substantial justice"). A district court presumes, however, that its exercise of jurisdiction over a defendant is reasonable if the first two requirements of the specific jurisdiction test are met. *See Ballard*, 65 F.3d at 1500 (citing *Sher*, 911 F.2d at 1364). If the first two requirements are satisfied, then the burden of proof shifts and the defendant "must 'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

The Ninth Circuit considers the following seven factors in determining whether the exercise of specific jurisdiction over a defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See Ziegler*, 64 F.3d at 475 (citing *Terracom*, 49 F.3d at 561) (finding that all seven factors must be weighed, but none are dispositive); *see also Worldwide Volkswagen*, 444 U.S. 286, 292 (1980) (listing several of the seven factors).

Because the Court has found that the first two requirements of specific jurisdiction have been met, Cox must come forward with a compelling case to rebut the presumption

---

merits of an action and ,when the facts are intertwined, the Court should resolve the motion as a motion for summary judgment on the merits of the plaintiff's complaint).

1    that jurisdiction in Arizona is reasonable.  Cox has failed to meet this burden.  In fact, the

2    balance of the aforementioned factors favors Plaintiff.

3        First, when a defendant knowingly conducts activities in a specific forum,

4    exercising jurisdiction is reasonable.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316,

5    1323 (9th Cir. 1998).  The Ninth Circuit found in *Panavision* that this factor weighed

6    strongly in the plaintiff's favor when the defendant knowingly interacted with the

7    plaintiff in the forum state.  *Id.*   As previously stated, Cox knowingly interacted with

8    Plaintiff in Arizona in a manner that supported an ongoing relationship with Plaintiff in

9    Arizona.  Accordingly, this factor weighs in favor of reasonableness.

10       Second, defending the instant action in Arizona places only a slight burden on

11   Cox.  There may be a burden on the defendant when the defendant does not have an

12   ongoing connection or relationship with the forum state.  *Core-Vent,* 11 F.3d at 1488.

13   However, the fact that local litigation might be inconvenient or that some other forum

14   may be more convenient is not enough for a court to find that this factor weighs against a

15   finding of reasonableness.  *Sher v. Johnson,* 911 F.2d at 1365.  Litigation must be so

16   gravely difficult that it puts the defendant at a severe disadvantage in comparison to his

17   opponent.   *Id.*    Thus, the burden on the defendant is examined in light of the

18   corresponding burden on the plaintiff.  *Brand v. Menlove Dodge*, 796 F.2d at 1075 (9th

19   Cir. 1986).  When a forum poses a slight inconvenience on the defendant, non-

20   jurisdictional methods of lessening the inconvenience are preferred.  *Sinatra v. Nat'l*

21   *Enquirer,* 854 F.2d 1191, 1199 (9th Cir. 1988).    Further, "modern advances in

22   communication and transportation have significantly reduced the burden" of litigating in

23   other forums.   *Id.*   While Arizona may not be Cox's preferred forum, the burden to

24   defend the action in Arizona is not so great as to constitute deprivation of due process.

25   Therefore, the second factor weighs in favor of finding jurisdiction reasonable.

26       Third, there is no conflict of sovereignty with Cox's state.  The conflict between

27   the laws of the defendant's home state and the state where the litigation is brought is not

28   a very significant factor in cases involving only U.S. citizens because conflicting policies

between states are settled through choice of law analysis, not through loss of jurisdiction. *Brand*, 796 F.2d at 1076 n. 5. Here, Cox is incorporated in Delaware, with its principal place of business in Georgia.  Therefore, in determining whether it is reasonable to exercise jurisdiction, this factor weighs in favor of reasonableness.

Fourth, the State's interest in adjudicating the dispute weighs in favor of finding jurisdiction reasonable.  Arizona has an interest in adjudicating claims that arise from continuing relationships with Arizona residents.  Accordingly, the factor weighs toward a finding of reasonableness.

Fifth, this Court is already adjudicating the dispute between Plaintiff and Cox's subsidiary, Manheim.  The claim alleged against Cox is also alleged against Manheim. Accordingly, it would be efficient for this Court to adjudicate the dispute between Plaintiff and Cox.  Thus, this factor weighs strongly in favor of reasonableness.

Sixth, the importance of the forum to Plaintiff's interest in convenience and effective relief is minimal.  However, because it would be more convenient for Plaintiff to resolve its claims against Manheim and Cox at the same time, this factor weighs in favor of reasonableness.

Finally, the Court considers whether an alternative forum exists.  The plaintiff bears the burden of proving the unavailability of an alternative forum.  *Core-Vent*, 11 F.3d at 1490.  Plaintiff has not shown that his claims cannot be effectively litigated in Delaware or Georgia.  Accordingly, this factor weighs against a finding of reasonableness.

In summary, a balancing of the relevant factors supports a finding that the exercise of jurisdiction is reasonable in this case and Plaintiff has satisfied the three-prong specific jurisdiction test with respect to Cox.  The Court holds that it has specific personal jurisdiction over Cox and, therefore, the Motion to Dismiss for lack of personal jurisdiction is denied.

**III.   COX'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Because the Court has personal jurisdiction over Cox, the Court will now consider Cox's Motion to Dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted.

### A.    Legal Standard

The Federal Rules of Civil Procedure embrace a notice-pleading standard.  All that is required to survive a Rule 12(b)(6) motion is "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99 (1957)).  In pleading the grounds of the claim, the plaintiff need not provide "detailed factual allegations," but the plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Id.* at 555.  This does "not impose a probability requirement at the pleading stage." *Id.* at 556.

"[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563.  Further, when analyzing a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw all reasonable inferences in favor of the plaintiff.  *See Assoc. for Los Angeles Deputy Sheriffs v. County of Los Angeles,* 648 F.3d 986 (9th Cir. 2011).

Cox argues that Plaintiff's FMLA claim is dependent on Plaintiff's status as an FMLA "eligible employee."  Cox argues that to be an eligible employee entitled to protection under the FMLA, the employee must work for a covered employer for at least 12 months, must have worked at least 1,250 hours during the previous 12 months, and the employee must have been employed at the work site where there are at least 50 or more employees within a 75 mile radius.  Cox argues that Plaintiff did not allege any of these facts in his Complaint, and, thus, he has failed to state a claim upon which relief can be granted under the FMLA.  Cox also argues that Plaintiff's failure to allege that Cox was

his employer is fatal to his FMLA claim, which only applies to employers and that Plaintiff's allegation that Manheim was his employer contradicts any claim that Cox is his employer.

In his Second Amended Complaint, Plaintiff alleged that Defendants were obligated to provide Plaintiff notice under the FMLA, Defendants knew or should have known of their obligations to provide Plaintiff notice, and failed to do so. Plaintiff also alleged that Defendants terminated Plaintiff on October 8, 2009 in retaliation and in violation of the FMLA.[7]

While the Court agrees with Cox that Plaintiff could have provided more facts in his Complaint to support his claim against Cox, the Court finds that Plaintiff has adequately stated a claim upon which relief can be granted. Reading the allegations in Count II as a whole, it is a reasonable inference that Plaintiff is alleging that he is an eligible employee, as defined in the FMLA, of Cox to which Cox has a duty to provide FMLA notice. Plaintiff's claims against Cox would make no sense otherwise. The Court must draw all reasonable inferences in favor of Plaintiff and accept Plaintiff's allegations as true under the 12(b)(6) standard. Accordingly, the Court finds that Plaintiff has stated a claim upon which relief can be granted and Cox's Motion to Dismiss is denied.[8]

Plaintiff seeks leave to file a Third Amended Complaint to add allegations relating

---

[7] Plaintiff also cites to "testimony" given in his Declaration that is attached to his Response to the Motion to Dismiss for Lack of Personal Jurisdiction to support his arguments. However, absent specific exceptions, the Court cannot consider matters outside the pleadings in determining a motion under 12(b)(6) without converting such motion into a motion for summary judgment under Federal Rule of Civil Procedure 56. *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (amended decision); Fed. R. Civ. P. 12. Accordingly, the Court has limited its analysis to the facts contained in the pleadings relating to the 12(b)(6) motion to dismiss and has not considered any outside information.

[8] Cox also argues that only one employer is responsible for providing notice to employees under the FMLA and, because Cox is, at best, Plaintiff's secondary employer, Plaintiff's FMLA claim against Cox necessarily fails. The Parties concede that the decision as to whether Cox is Plaintiff's employer is factually intensive and inappropriate for determination on a Motion to Dismiss. The Court agrees that, at this stage, it would be inappropriate to determine what obligations, if any, Cox owed to Plaintiff under the FMLA, including whether Cox was Plaintiff's primary employer, integrated or joint employer or not Plaintiff's employer at all.

1   to Plaintiff's previously asserted claims against Defendants.  In light of this Court's

2   decision on Cox's Motion to Dismiss, Plaintiff's Motion to Amend is denied as moot.

3           **IV.    MANHEIM'S MOTION TO STRIKE JURY DEMAND**

4           Manheim moves to strike the jury demand made in Plaintiff's Second Amended

5   Complaint as untimely.  Plaintiff did not make a timely jury demand in his original

6   complaint or in his First Amended Complaint.  Thirty-five days after Manheim answered

7   the First Amended Complaint, the Parties submitted a Joint Proposed Case Management

8   Plan to the Court wherein Plaintiff agreed that a jury trial was not requested.

9           Plaintiff argues that his jury demand is not untimely on his newly-added FMLA

10  notice claim because Plaintiff has presented new issues of fact with regard to this claim,

11  and, thus, a jury demand is appropriate.  Plaintiff also argues that, because a jury demand

12  is appropriate for his FMLA claim, this Court should exercise its discretion to allow a

13  jury trial on both Counts of his Complaint.

14          **A.      Legal Standard**

15          "On any issue triable of right by a jury, a party may demand a jury trial by: (1)

16  serving the other parties with a written demand—which may be included in a pleading—

17  not later than 14 days after the last pleading directed to the issue is served."  Fed. R. Civ.

18  P. 38(b)(1).  The filing of an amended complaint revives the right to a jury trial only if

19  that complaint raises new issues not raised by prior pleadings, and then only as to those

20  new claims.  *Lutz v. Glendale Union High School*, 403F.3d 1061, 1066 (9th Cir. 2005);

21  *see also* Fed. R. Civ. P. 38(d) ("A party waives a jury trial unless its demand is properly

22  served and filed.").  "'[T]he presentation of a new *theory* does not constitute the

23  presentation of a new *issue* on which a jury trial should be granted [as of right] under . . .

24  Rule 38(b).'  Rather, Rule 38(b) is concerned with issues of fact."  *Id.* (internal quotation

25  and citations omitted).  Thus, if the issues in the original complaint and the amended

26  complaint turn on the same "matrix of facts," then a party is not entitled to a trial by jury.

27  *Las Vegas Sun, Inc. v. Summa Corp.,* 610 F.2d 614, 620 (9th Cir. 1979).

28          Further, a district court has discretion to order a jury trial on a motion by a party

who has not filed a timely demand for one.  Fed. R. Civ. P. 39(b).  This discretion is narrow and does not permit a court to grant relief when the failure to make a jury demand is a result of an oversight or inadvertence.  *Lewis v. Time, Inc.,* 710 F.2d 549, 556-57 (9th Cir. 1983); *see Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 675 (9th Cir. 1975) (although relief under the rule is in the discretion of the district court, relief should rarely be granted in default of a proper request for it).

### B.    Analysis

The main dispute between the Parties is whether Plaintiff's Arizona Employment Protection Act ("AEPA") claim asserting that Manheim terminated Plaintiff in retaliation for his exercise of his worker's compensation right as a result of his injury and Plaintiff's FMLA claim asserting that Manheim and Cox failed to inform Plaintiff of his FMLA rights, despite their knowledge that he had sustained an injury, arise from the same matrix of facts.

Plaintiff's AEPA claims and FMLA claim arise from the same matrix of facts. Plaintiff alleges that his termination was a violation of the AEPA and FMLA.  Plaintiff relies on the telephone conversation with Manheim executives on August 13, 2009 to demonstrate that Manheim fired him in violation of his exercise of worker's compensation rights and to demonstrate that Cox and Manheim should have known that Plaintiff was entitled to notice under the FMLA.  All of Plaintiff's claims relate to his injury and termination.  Accordingly, all of Plaintiff's claims arise from the same matrix of facts and Plaintiff's addition of his FMLA claim is a new legal theory that does not entitle to Plaintiff to the revival of his right to a jury trial.

Further, Plaintiff has not provided the Court with any evidence that his original failure to request a jury demand resulted from anything other than an oversight or inadvertence.  Accordingly, the Court cannot exercise its discretion to grant Plaintiff a jury trial.  Therefore, Manheim's Motion to Strike Plaintiff's Jury Demand is granted.

### V.    CONCLUSION

Based on the foregoing,

1    **IT IS ORDERED** that Cox Enterprises, Inc.'s Motion to Dismiss for Lack of

2    Jurisdiction and Failure to State a Claim on Which Relief can be Granted (Doc. 39) is

3    denied as set forth herein.

4    **IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend

5    Second Amended Complaint (Doc. 51) is denied as moot.

6    **IT IS FINALLY ORDERED** that Manheim Remarketing, Inc.'s Motion to Strike

7    Plaintiff's Jury Demand (Doc. 28) is granted.

8    Dated this 13th day of June, 2012.

9

10

11                                        _____

12                                        James A. Teilborg
                                          United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28